STEVEN A. NIELSEN, CALIFORNIA STATE BAR NO. 133864
(STEVE@NIELSENPATENTS.COM)
100 LARKSPUR LANDING CIRCLE, SUITE 216
LARKSPUR, CA 94939-1743
TELEPHONE: (415) 272-8210
FACSIMILE: (415) 461-2726

Attorneys for Plaintiff
MY NEMESIS, LLC, a California limited liability company

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MY NEMESIS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Sennheiser Electronic Corporation., a California foreign stock corporation; and Does 1 to 100<br><br>Defendants. | **PATENT**<br><br>Case No.<br><br>**COMPLAINT FOR JUDGMENT OF INFRINGEMENT OF PATENT 8,055,004 AND FOR TEMPORARY AND PERMANENT INJUNCTIONS**<br><br>**DEMAND FOR JURY TRIAL** |

MY NEMESIS, LLC, hereinafter referred as (“MY NEMESIS”) a California limited liability company, by its undersigned attorney, for its Complaint (“Complaint”) against Sennheiser Electronic Corporation, hereinafter referred as (“SENNHEISER”) a California foreign stock corporation, alleges on personal knowledge as to its own acts and on information and belief as to the actions of others, as follows:

## THE PARTIES

1. Plaintiff MY NEMESIS, LLC is a limited liability company registered at California and located at 334 Santana Row, Suite 342, San Jose, CA 95128.

2. Upon information and belief, the Defendant Sennheiser Electronic Corporation is a California foreign stock Corporation with a CA Business ID of C1992438, having its foreign principal place of business located at 1 ENTERPRISE DRIVE, OLD LYME, CT 06371, and a physical presence in California of R&D Sennheiser Technology & Innovation center located at Showplace Square West, 550 15th Street, Suite 37, San Francisco, CA 94107.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).
4. Upon information and belief, Defendant SENNHEISER is subject to personal jurisdiction by this Court. Defendant SENNHEISER has committed such purposeful acts and/or transactions in the State of California that it reasonably knew and/or expected that it could be hailed into a California court as a consequence of such activity. Defendant SENNHEISER makes, uses, and/or sells infringing products within the Northern District of California and has a continuing presence and the requisite minimum contacts with the Northern District of California, such that this venue is a fair and reasonable one.
5. Upon information and belief, Defendant SENNHEISER has transacted and, at the time of the filing of this Complaint, is continuing to transact business within the Northern District of California. To wit, Defendant SENNHEISER has a physical presence in San Francisco.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to claims occurred in the Northern District of California.

## BACKGROUND

7. On November 8, 2011 United States Patent No. 8,055,004 ("the '004 patent") entitled "FIBER OPTIC EARPIECE TO REDUCE RADLATION TRANSMITTED TO A CELL PHONE USER" was duly and legally issued to the inventors, Amit J. Ronen and Alon Konchitsky. (Exhibit A, the '004 Patent)

8. MY NEMESIS, the Plaintiff acquired ownership interest of the said '004 patent from the inventors/assignors Admit J. Ronen and Alon Konchitsky. The Plaintiff is the owner of any and all rights, title and interest over the '004 patent (patent-in-suit). (Exhibit B – U.S Patent Assignments)

9. The '004 patent pertains to wireless phone technology. More particularly, the invention relates to a protective, radiation free earpiece to protect the user from RF energy radiation emanating from a phone apparatus and to provide an enhanced, high-quality communication signal between the cell phone and an earpiece. Claimed embodiments include an ear piece using optical fiber that shields the human brain from radio frequency radiation generated by wireless phones and similar radio devices. Claimed embodiments prevent unwanted exposure to potentially harmful radiation and provide an enhanced communication path between a cell phone and ear-piece.

10. The ‘004 patent further pertains to a method of constructing a communication path within an earpiece. More particularly, the method comprises, the use of a microphone to receive an analog signal; the use of amplifier to amplify the analog signal; the use of an ADC block to convert the analog signal to a digital signal; the use of a memory chip to store the digital signal; the use of a parallel to serial converter to convert the contents of the memory chip to a serial format; the use of optical modulation to modulate the contents of the digital signal in serial format; the use of a fiber optic medium to carry the digital signal; the use of demodulation upon the digital signal; the use of a series to parallel converter upon the digital signal; the use of a second memory chip to store the digital signal in a parallel format; and the use of a DAC block to convert the contents of the second memory chip into an analog format.

11. According to 35 U.S.C. 154(a)(1), ownership of a patent gives the patent owner the right to exclude others from making, using, offering for sale, selling, or importing into the United States the invention claimed in the patent. Therefore the Plaintiff in this instant action has the right to exclude others from manufacturing, selling, using and importing the claimed devices and methods in United States of U.S. Patent 8,055,004 (“the ‘004 patent”, or “patent-in-suit”).

12. Defendant SENNHEISER is a technology is active in commercializing, and marketing products focused on microphones, headphones, wired microphones and monitoring systems, conference and information technology, and products for assistive listening across a range of markets.

13. One of the products of the Defendant SENNHEISER is sometimes sold as "Sennheiser's IAS MO 2000" (hereinafter referred as "the infringing product") through ecommerce websites and through dealer operated outlets to many countries including the United States and including the San Francisco area.




FIG. 1 – IAS MO 2000

14. The infringing product is purported and/or advertised to operate with the principle wherein the optical microphone, light from an LED is directed onto a reflective diaphragm via an optical-fiber cable (transmitter optical waveguide). The membrane reflects part of the light into a receiver optical waveguide. If the diaphragm is moved by sound signals, a displacement of the reflected light beam occurs; with the result that more or less light is coupled into the receiver waveguide. At the end of the receiver waveguide, a photodiode converts the light intensity variations into electric signals.

15. The infringing product is advertised to comply with the requirements regarding intrinsically safe optical radiation according to EN 60079-0:2004 and EN 60079-28:2007. It also advertised to meet the requirements of the ATEX Directive on

explosion protection, which was documented with the Type Examination Certificate TUV 07 ATEX 553824 and TUV 07 ATEX 553825X. As advertised, this certification allows the IAS MO 2000 SET to be used in potentially explosive atmospheres of Zone 1 (e.g. gas processing plants). The IAS MO 2000 SET has the degree of protection IP 54 (5= protection against dust deposits, 4= protection against splashing water from all directions) and is therefore ideally suited for outdoor applications.

16. The infringing product is advertised to have technical features such as 20 Hz to 40 kHz (+/- 6 dB) frequency response (Microphone); 134 dB sound pressure level (SPL); signal-to-noise ratio more than 50 dB(A) for an acoustic pressure of 1 Pa; 100-240 V AC to 12 V DC, 5.4 W plug-in power supply with country adapters; 330 Ω asymmetrical / 660 Ω symmetrical output impedance; gain infinitely variable in the range +/-15 dB, switchable in steps 0 dB, + 20 dB, + 40 dB; 120 mA current consumption 15 mV/PA sensitivity as per 121 TR 9-5; multimode 200/230 µm fiber glass and 15 mV/Pa (potentiometer in mid position, switch set to 0 dB) output level.

17. The infringing product is advertised to have advantages including optical and microphone advantages wherein the microphone head and the electronics can be located far away from each other. The component parts of the MO 2000 H acoustic-optical microphone head (external diameter 1/2") are made of a plastic material that is suitable for use in areas with aggressive substances (gases, salts, humidity) and radiation. All components of the microphone head, including the optical waveguides, are free of metal; no electric current flows.

18. According to the Defendant Sennheiser's advisements and marketing literature, the infringing product can be used in potentially explosive atmospheres, such as for the acoustic monitoring of gas drying plants in natural gas production (IAS MO 2000 SET). In such case, the microphone will "hear" slow leaks, which, due to their small size, cause neither a pressure loss nor an alarm message in the other monitoring systems.

19. Further, the marketing literature states that in medical applications, the microphone is ideal for use in magnetic resonance imaging (MRI), for example to maintain communication with the patient during MRI scans or to achieve active noise cancellation in MRI. The optical microphone does not disturb the imaging process and is itself not influenced by the strong fields inside magnetic resonance imaging equipment. In addition to this, the Defendant's advisements and marketing literature states that in measuring technology, the microphone is ideal for use in EMI/EMC laboratories, as it does not influence the electric field. In this case, for example, it functions like an "ear on a mobile phone".

20. Defendant Sennheiser's infringements specifically pertain to Claim 2 of the '004 patent. Defendant Sennheiser used a copy cat approach in manufacturing the infringing product using the features claimed in the '004 patent and to give an impression of a new product sometimes called "Sennheiser's IAS MO 2000."

21. The infringing product adopts a digital opto-acoustic microphone that receives the analog sound signal which is then digitalized within the microphone capsule and then transmitted, received and processed further. This particular feature of the infringing product accommodates the use of an opto-acoustic microphone to

receive an analog signal similar to the claim limitations of the ‘004 patent. The infringing product also has a storage medium to store the digital signal that is transmitted from the opto-acoustic microphone similar to the use of a memory chip to store the digital signal as claimed in the claim limitations of the ‘004 patent.

22. The infringing product further adopts an amplification system infinitely variable in the range +/-15 dB, switchable in steps 0 dB, + 20 dB, + 40 dB by using an high-end, solid-state amplifier that harmonize perfectly and deliver an ultimate acoustic performance when paired with any of Sennheiser’s audiophile headphones. This amplification system of the infringing product is similar to the use of an amplifier to amplify the analog signal as stated in the claim limitations of the ‘004 patent.

23. The infringing product comprises an omni-directional microphone having the feature of an A/D converter. The infringing product comprises compact digital module which is simply screwed onto the microphone head in place of the XLR module, turning the audio signal to a digital form, and wherein the microphones can be synchronized by any digital system. In addition to the A/D converter (24-bit, sampling rate up to 192 kHz), the digital module contains a highly integrated DSP unit. These features are similar to the use of an ADC block to convert the analog signal to a digital signal and the use of a series to parallel converter upon the digital signal as described in the claim limitations of the ‘004 patent.

24. The infringing product comprises the use of optical modulation to modulate the contents of the digital signal in serial format as stated in the claim limitations of

the ‘004 patent, and provides a type of transducer that processes acoustic signals on the basis of variations in light intensity. The infringing product includes SC optical input method which acts as the fiber optic medium to carry the digital signal. This optical fiber transmission system is similar to the claim limitations of the ‘004 patent. (Fig. 2)




FIG. 2

25. The infringing product operates with the principle wherein the optical microphone, light from an LED, is directed onto a reflective diaphragm via an

optical-fiber cable (transmitter optical waveguide). The membrane reflects part of the light into a receiver optical waveguide. If the diaphragm is moved by sound signals, a displacement of the reflected light beam occurs; with the result that more or less light is coupled into the receiver waveguide. At the end of the receiver waveguide, a photodiode converts the light intensity variations into electric signals. This is similar to the use of demodulation upon the digital signal as claimed in the claim limitations of the ‘004 patent.

26. The infringing product replicates the use of a DAC block to convert the contents of the second memory chip into an analog format as claimed in the claim limitations of the ‘004 patent in an identical way as it connects with digital sources and is equipped with a high-quality Burr-Brown digital/analog converter (DAC) that converts digital audio data into analog signals with a resolution of 24 bits and a sampling rate of up to 192 kHz with the analog balanced output impedance as 600 Ohms, and unbalanced output impedance as 33 Ohms.

27. The patent infringement directly arising from Defendant’s Sennheiser’s IAS MO 2000 is further delineated in a comparative analysis and diagrammatic representation which maps the Defendant’s infringing product to the limitations of claim 2 of the ‘004 patent. (Exhibit D)

28. Plaintiff My Nemesis, herein by virtue of the ownership granted by the assignor(s) of the ‘004 patent, claims damages for infringement for the reason that the Defendant has not acquired any consent/license/assignment/ownership of the ‘004 patent.

**Cause of Action**

**(Claim for Patent Infringement against Sennheiser)**

29. Plaintiff hereby restates and re-alleges the allegations set forth in the above paragraphs and incorporates them by reference.

30. My Nemesis is the owner of the ‘004 patent with the exclusive right to enforce the ‘004 patent against infringers, recover for past, present, future infringements, violations thereof and collect damages for all relevant times, including the right to prosecute this action.

31. My Nemesis is informed and believes, and based thereon alleges, that SENNHEISER has made, used, offered to sell, and/or sold within the United States, and/or imported into the United States the infringing product that infringe the claims of the ’004 patent, literally and/or under the doctrine of equivalents, in violation of statutory rights of the plaintiff My Nemesis.

32. My Nemesis is informed and believes, and based thereon alleges, that Defendant SENNHEISER was aware of the ’004 patent at the time it engaged in its directly and indirectly infringing activities and, in any event, was aware of the ’004 patent at least as early as the service date of this complaint.

33. Moreover, on information and belief, the Defendant SENNHEISER manufactured, sold and/or offered for sale and/or imported the infringing product, Sennheiser’s IAS MO 2000, and is continuing to do so, to customers and others knowing the same to infringe the ’004 patent, and, through its marketing,

packaging, product literature, user manuals, technical support, and other published and electronic materials and resources related to the infringing product Sennheiser's IAS MO 2000, actively encouraged and specifically intended its customers and others to use the Sennheiser's IAS MO 2000, in the United States in a manner that SENNHEISER knew to be infringing, and such customers and others directly infringed the '004 patent.

34. As a result of SENNHEISER's unlawful infringement of the '004 patent, My Nemesis has suffered and will continue to suffer damage. My Nemesis is entitled to recover from Defendant SENNHEISER, the damages adequate to compensate for such infringement, which have yet to be determined.

35. Upon information and belief, Defendant SENNHEISER has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and, on information and belief, SENNHEISER knew or should have known of that objectively high risk.

36. SENNHEISER's acts herein constitute willful and deliberate infringement, entitling My Nemesis to enhanced damages under 35 U.S.C. § 284 and reasonable attorney fees and costs. SENNHEISER's acts of infringement of the '004 patent herein have been made, and/or are being made at the time of service of this complaint, with full knowledge about the rights of My Nemesis in the patent.

37. SENNHEISER's acts of infringement have caused and will continue to cause irreparable harm to My Nemesis unless and until enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, MY NEMESIS requests that the Court enter judgment in its favor and against SENNHEISER on its Complaint with prejudice as follows:

A. That SENNHEISER be held to have infringed upon the ‘004 patent.

B. That a temporary and permanent injunction be granted pursuant to 35 U.S.C. § 283, enjoining SENNHEISER, and each of its agents, servants, employees, principals, officers, attorneys, successors, assignees, and all those in active concert or participation with SENNHEISER, including related individuals and entities, customers, representatives, OEMs, dealers, and distributors from further acts of (1) infringement, (2) contributory infringement, and (3) active inducement to infringe with respect to the claims of the ‘004 patent.

C. That SENNHEISER, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with them, or any of them, be temporarily and preliminarily enjoined during the pendency of this action, and permanently enjoined thereafter from infringing, contributing to the infringement of, and inducing infringement of the ‘004 patent, and specifically from directly or indirectly making, using, selling, or offering for sale, any products or services embodying the inventions of the ‘004 patent during the life of the claims of the ‘004 patent, without the express written authority of My Nemesis.

D. That SENNHEISER be directed to fully compensate My Nemesis for all damages attributable to SENNHEISER's infringement of the '004patent in an amount according to proof at trial.

E. That this case be deemed exceptional.

F. That all damages awarded be trebled.

G. That SENNHEISER be ordered to deliver to MY NEMESIS, for destruction of all products that infringe the '004 patent, at My Nemesis' option.

H. That SENNHEISER be required to account for all gains, profits, advantages, and unjust enrichment derived from its violation of law.

I. That MY NEMESIS, be awarded reasonable attorneys fees.

J. That MY NEMESIS, be awarded the costs of suit and an assessment of interest.

K. That MY NEMESIS have such other, further and different relief as the Court deems proper.

DATED: July 5, 2017 By /s/ Steven A. Nielsen
Steven A. Nielsen
Attorneys for Plaintiff

MY NEMESIS, LLC, a California limited liability company

## JURY DEMAND

Pursuant to Fed.R. Civ. P. 38(b), MY NEMESIS, LLC demands a trial by jury of all issues triable of right by jury.

By /s/ Steven A. Nielsen
Steven A. Nielsen

Attorneys for Plaintiff

MY NEMESIS, LLC, a California limited liability company